BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: Covidien Hernia Mesh Products Liability Litigation** : : : : : : : : : : | **MDL No. ___** |

### RESPONSE OF PLAINTIFFS TO DEFENDANT'S MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407, AND JPML RULE 7.2, FOR COORDINATED PRETRIAL PROCEEDINGS

Pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs Sharon and Max Black, by and through their counsel at Sadaka Associates, LLC respectfully respond to Defendants'[1] Motion for Transfer all federal Covidien hernia mesh related cases for coordinated pretrial proceedings. For the reasons discussed below, the Panel should not consolidate these cases because a request at this time is premature. In the alternative, these lawsuits should be transferred and centralized to the District of Massachusetts, where Covidien located and where a separate state court consolidation is already pending.

### INTRODUCTION

Plaintiffs are opposed to the creation of the MDL for one simple reason: the additional time it will take for them to get to verdict. They have already been deposed, their physician who chose to use a Covidien product has already been deposed, Covidien has produced some of the discovery requested of them and a motion to compel production of the rest is pending in the Western District

---

[1] The Covidien Defendants are Covidien LP, Covidien Holding Inc., Covidien, Inc., Covidien plc, Tyco Healthcare Group, Tyco International, Sofradim Productions SAS, Medtronic, Inc., and Medtronic USA, Inc. (collectively, "Covidien").

1

of New York. Creating an MDL at this time would be extremely prejudicial to them. Their Complaint has been pending since September 26, 2016 and if an MDL were to be created now, it would add another four years or more before their case is heard by a jury. Additionally, Covidien withdrew or otherwise stopped selling the product implanted into Ms. Black and the case for product defect is extremely strong. Combine that with the problems detailed in Covidien's Petition discussed below, and the Plaintiffs ask that their case be allowed to go to verdict without being transferred.

## PROBLEMS WITH COVIDIEN'S PETITION TO TRANSFER

According to Covidien's Petition, at the time of its filing, Covidien was aware of 12 pending federal lawsuits from a total of 15 Plaintiffs who are alleging injuries from Covidien hernia mesh products. *Petition* at 2. Covidien also states that an additional 141 cases are filed in state court across the country, with the majority of them being part of a Massachusetts state consolidation. *Id*. Covidien's Petition does not contain numbered factual averments, and instead it makes generalized misrepresentations about the history of hernia mesh, other hernia mesh MDLs, pending and dismissed federal cases, and the safety of its products. See *id*., generally. As such, Plaintiffs will not be responding to each misstatement made by Covidien, but without a certification of veracity, this Panel should not take anything contained in Covidien's Petition as fact.

For instance, Covidien recounts that there have been several other hernia mesh litigations consolidated by this Panel in the last ten years, and that the 12 pending federal cases are "copy-cat" by nature and should be consolidated for the same reasons why other hernia mesh litigations were. *Id*. at 1. However, Covidien is flat out wrong when it equivocates the 12 cases currently pending to the thousands of other manufacturer's hernia mesh cases that have been filed in federal court in the past decade.

Indeed, Covidien's Petition states that none of its products have been subject to recall or product withdrawal, but a simple *Google* search shows that its Surgipro mesh product was FDA recalled at least once.[2] And while Covidien's website details 16 different hernia meshes that it offers for sale, the Multifilament Parietex Composite implanted into Sharon Black is no longer for sale, meaning it must have been either recalled outside of the U.S., withdrawn, or taken off the market.[3] And of the 12 pending federal cases, there are only 5 Covidien products described: 7 cases involve the Parietex Optimized Mesh, 2 involve the Symbotex Composite Mesh, 1 involves a Parietex Composite Ventral Mesh Patch, 1 involves the Parietex Plug and Patch, 2 Complaints do not detail which Covidien Mesh is at issue, and only 1 case involves the Multifilament Parietex Composite Mesh—which is my client, Sharon Black.

These 5 hernia meshes are a far cry from the 20 products subject to suit that Covidien states in its Petition, but Covidien must have been referring to all of the 141+ cases currently pending against it in state courts across the country. Taken in total, when this Petition was filed, there were 153 cases pending against Covidien across the country, but only 12 filed in federal court, and only 5 different products are the subject of those suits.

And while Covidien states with *certainty* that the number of federally filed cases will "balloon" just as they did in other hernia mesh litigations, there is no evidence that that is going to happen and there is every indication that the number of federal cases will remain low. Covidien is misleading the Panel when it points to the initial low number of federal cases filed in the beginnings of the Atrium, Ethicon, and Bard hernia mesh MDLs because those MDLs are several years old and there is no evidence that there will ever be any more cases filed in federal court—and in fact, Covidien has already provided the Panel with the reason why there will not be a flood of federal

---

[2] Exhibit 1; FDA Recall of Surgipro
[3] Exhibit 2: Covidien mesh for sale

filings.

Indeed, Covidien points the websites of four national law firms known for their litigation of hernia mesh and pelvic mesh MDLs (Andrus Wagstaff, Hollis Law Firm, Blasingame Burch Garrard Ashley, and Weitz & Luxenberg) as evidence that national hernia mesh advertising campaigns are underway. And Covidien even acknowledges the fact that hernia mesh advertising has been going on since the recalls of Bard's Composix Kugel Hernia Mesh began in 2005,[4] meaning that if thousands of Covidien cases exist, then there should be many, many more cases filed in federal court by now. This lack of filed federal cases points to 2 possibilities: (1) these law firms identified by Covidien—who have been advertising for years for hernia mesh injury cases and who have led and lead other hernia mesh and pelvic mesh MDLs—simply have *no* Covidien hernia mesh injury cases or (2) those law firms have made the decision to pursue their cases in Massachusetts State Court.

And of those two possibilities, a random sampling of cases filed against Covidien in Massachusetts shows that both Weitz & Luxenberg and Andrus Wagstaff have been filing Covidien mesh cases there since at least 2017,[5] which is the timeframe when the Atrium, Ethicon, and Bard hernia mesh MDLs were being created. And if those law firms with national hernia mesh advertising campaigns were going to be pursuing cases in federal court, then they would have cases on file by now so that they could participate in these JPML proceedings and so that they could be a part of the leadership if an MDL is formed.

This Panel will likely never know why these firms are filing their cases in Massachusetts state court and why there aren't a multitude of other federal Covidien hernia mesh cases filed already, but for Covidien to call it a *certainty* that federal cases will "balloon" is unbelievable.

---

[4] Exhibit 3; Kugel 2015 recall.
[5] Exhibits 4 and 5; docket reports from Middlesex County where Covidien is a defendant.

## THE DISTRICT OF MASSACHUSETTS
## IS THE PROPER VENUE FOR A CONSOLIDATION

If this Panel does create an MDL, it should **not** be centralized in the Southern District of New York ("SDNY"). Indeed, while Covidien acknowledges the obvious risk of COVID infections inherent to New York City, Covidien also points to several positive aspects of consolidating in SDNY such as the District's experience with handling MDLs, and its proximity to airports as well as Covidien witnesses. However, the District of Massachusetts is much more convenient to the parties in terms of travel, issuing subpoenas, and deposing witnesses—SDNY is over 200 miles from Boston—and the Boston area has all the amenities that are available in SDNY.

The District of Massachusetts is also closer to the Massachusetts State Court consolidation, which is where more than a hundred cases have been pending since at least 2017.[6][7] And if an MDL is created, the location of the Massachusetts District Court would be more appropriate for issuing subpoenas for witnesses located in that state and for coordinating with the Massachusetts state consolidation. The District of Massachusetts is also far less burdened that SDNY; SDNY has 18 MDLs assigned to it as of June 2020, and the Massachusetts District Court only has 7.[8] A Covidien MDL would also be significantly behind the State Court consolidation, which has had cases in discovery for years and is having its first case management conference soon. As such a Covidien MDL would need to coordinate with the State Court Consolidation at every step of the way, including document production, deposing witnesses, and everything else that comes with litigation involving a corporation headquartered outside of the U.S.

The District of Massachusetts is also part of the First Circuit, and that is where Covidien's principle place of business is in the U.S., additionally, MDL-1842, the Kugel Mesh Hernia Patch

---

[6] Exhibit 6; Search results for Covidien as a defendant in the Superior Court in Middlesex County, MA.
[7] Exhibit 7; Order creating Massachusetts State Court Consolidation dated May 4, 2020.
[8] Exhibit 8; MDL Statistics Report - Distribution of Pending MDL Dockets by District.

Litigation and MDL-2753, the Atrium Medical Corp. C-Qur Mesh Products Liability Litigation were both consolidated in the First Circuit, so the caselaw on hernia mesh litigation is well founded there. In contrast, SDNY is a sister district with differing views than the First Circuit on many aspects of product liability law. Covidien should be held accountable where it resides, not where it wants to be held accountable—which is in a District Court that granted 7 of the 14 dismissals granted to Covidien to date.[9]

Furthermore, if one were to assume that the number of federal cases is going to "balloon," as Covidien suggests, then there would be no reason to centralize in SDNY. The obvious, sensible location—assuming thousands of cases will be filed—is the District of Massachusetts. Indeed, Covidien already has a state court consolidation there, and Covidien even admits in its Petition that its Surgipro product was developed and manufactured in Connecticut—meaning that there are no other ties to New York other than the fact that four cases are currently pending in the Southern District. *Petition* at FN14.

All of which means that there is no reason to even consider SDNY for a centralized consolidation;

- COVID infections, for whatever reason, pose a greater threat in SDNY than the District of Massachusetts.
- Subpoenas issued from the Massachusetts District Court would be more convenient to the parties than from SDNY; SDNY is over 200 miles from Covidien's residence.
- The largest hernia mesh litigators in the country and MDL leaders from other mesh consolidations have been filing Covidien cases in Massachusetts State Court since 2017 and a consolidation was created there in May, which will be far ahead of an MDL, if created.
- It is highly unlikely that the numbers of federally filed cases will "balloon" three years after filings began in other hernia mesh MDLs, and it is just as likely that very few other cases will be filed in federal court.
- SDNY is already burdened with 18 active MDLs.
- Covidien resides in the First Circuit, which already has a history of well-reasoned law into hernia mesh products liability cases and the only reason why Covidien

---

[9] Exhibit 9; Covidien's statement of dismissed actions filed with its Petition.

- wants a consolidation in SDNY is because 7 of its 14 dismissals were granted in that district.
- If Covidien is right, and the cases do "balloon" then there is no reason to consolidate in SDNY because the only connection there is that 4 cases are currently pending.

Thus, if this Panel decides to create an MDL, the District of Massachusetts is the only place that makes sense.

## THE AGGREGATE TRANSFER OF ACTIONS UNDER 28 U.S.C. §1404 WOULD NOT BE APPROPRIATE

The aggregate transfer of all 12 federal Covidien hernia mesh lawsuits to a single district court under 28 U.S.C. §1404 would not be appropriate. While it is possible to transfer all of these cases "for the convenience of parties and witnesses, in the interest of justice" under §1404, those transfers would require long-term, binding commitments by Plaintiffs and their counsel, solely because this kind of transfer is a final one—and it would require trial to be transferred to that jurisdiction as well. 28 U.S.C. §1404. And that is not an option in this case.

In contrast, if the Panel decides to order centralized transfer under §1407, that transfer is for pre-trial purposes only, and would not require plaintiff consent, since the vast majority of these cases would likely be remanded when they are ready for trial. 28 U.S.C. §1407. Additionally, §1407 allows this Panel to consider the effect that centralized transfer could have on the likelihood of settling those coordinated cases—which is not a factor that courts can consider when deciding whether to transfer under §1404. See, e.g., David F. Herr, Multidistrict Litigation Manual Sec. 5.48, at 161 (2007); see also In re Air Crash Disaster, 346 F. Supp. 533, 534 (J.P.M.L. 1972), (the Northern District of Illinois denied a motion to transfer under §1404, and the JPML later granted a motion to transfer (to the same transferee court) under §1407 in part because centralization and coordination is for pretrial purposes only; see also In re: American Financial Corp. Litig, 434 F. Supp. 1232, 1234 (J.P.M.L. 1977) (the trial court denied transfer under §1404, and the JPML later

7

consolidated the litigation, stating that the considerations for transfer under §1407 were different from the considerations under §1404); see also In re Radioshack Corp. "ERISA" Litig., 528 F. Supp. 2d 1348, 1349 (J.P.M.L. 2007) (a motion to coordinate under §1407 was granted after an earlier denial of a motion to transfer under §1404: "Factors in a denial of a §1404(a) transfer are different from the criteria for §1407 centralization.")

Furthermore, the Multidistrict Litigation Manual states that many judges are reluctant to order transfer under §1404 until discovery has begun and likely trial witnesses can be identified, but, in contrast, a transfer under §1407, which is for pretrial purposes only, does not depend on any initial discovery to be undertaken. See Multidistrict Litigation Manual Sec. 5:9, at 116. Thus, transfer and centralization under §1404 is not a good option for any party in these cases.

## ARGUMENT

**A. Minimal Parties are Involved and Can Use Alternatives to Centralization.**

Where "only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *In re Cal. Wine Inorganic Arsenic Levels Prods. Liab. Litig.*, 109 F. Supp. 3d 1362, 1363 (J.P.M.L. 2015). The presence of common counsel involved in the actions also weighs against centralization. *In re: CVS Caremark Corp. Wage and Hour Emp't. Practices Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010). Here, only 12 Covidien cases are pending in nine district courts with only a handful of law firms representing all parties. Covidien has a much heavier burden to demonstrate that centralization of these cases is appropriate, and it has failed to meet that burden.

Where a litigation is limited to a small number of cases and few district courts are involved, suitable alternatives to Section 1407 are available and transfer is inappropriate. *See In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litigation*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) (denying

transfer where actions were pending in three district courts because consultation and cooperation among the courts was a suitable alternative to Section 1407 transfer); *In re Fedex Ground Package Sys. Empl. Practices Litig.*, 366 F. Supp. 2d 1381, 1382 (J.P.M.L. 2005) (denying transfer of actions in seven districts because "alternatives to transfer exist that can minimize whatever possibilities there might be of duplicative discovery, inconsistent pretrial rulings, or both"); *In re Quaker Oats Trans-Fat Mktg. & Sales Practices Litig.*, 777 F. Supp. 2d 1344 (J.P.M.L. 2011) (denying transfer of actions because the parties "have every ability to cooperate and minimize the possibilities of duplicative discovery and inconsistent pretrial rulings"); *In re: Rite Aid Corp. Wage and Hour Employment Practices Litig.*, 655 F.Supp.2d 1376, 1377 (J.P.M.L. 2009) (denying centralization of actions pending in four districts and noting "[c]ooperation among counsel and the parties is particularly appropriate here, where plaintiffs in four of the six actions encompassed by the motion share counsel"); *In re CVS Caremark Corp. Wage & Hour Empl. Practices Litig.*, 684 F. Supp. 2d 1377, 1378 (J.P.M.L. 2010) (denying transfer of actions filed in four districts because "[a]vailable alternatives to centralization may minimize whatever possibilities might arise of duplicative discovery and/or inconsistent pretrial rulings"). Here, there are 12 cases pending in only nine district courts and there is a Massachusetts state court consolidation that all of these cases can coordinate with and work with to collect discovery and take depositions.

Indeed, and as stated above, Covidien admits in its Petition that national advertising campaigns have been active for many years, and those law firms that Covidien points to have not filed any cases in federal court and instead have been filing them in Massachusetts State Court for three years. And although "movants believe that the filing of related actions is likely, the mere possibility of additional actions does not support centralization*." Id.,* citing *In re: California Wine Inorganic Arsenic Levels Prods. Liab. Litig.*, 109 F. Supp. 3d 1362, 1363 (J.P.M.L. 2015).

Plaintiffs are willing to consult and cooperate with Covidien and the Massachusetts Consolidation to coordinate pretrial efforts. And no facts or reasons exist to suggest that the minimal number of concerned District Courts would be unable to cooperate in this matter.

### B. Common Facts Do Not Predominate the Subject Actions.

Section 1407 does not empower the Panel to transfer cases involving only common legal issues. *In re: Teamster Car Hauler Prod. Liab. Litig.*, 856 F. Supp. 2d 1343, 1343 (J.P.M.L. 2012) ("While plaintiffs in each action allege that trailers manufactured by Cottrell were defective and caused them injury, the defects alleged and injuries suffered vary among these actions, and various additional defendants are named based on different theories of liability."). The chief disputed legal issues in these Covidien cases are predominately individualized in that only 5 Covidien hernia mesh products are involved in all 12, and each mode of injury and defects inherent to these 5 hernia meshes are different, making the factual issues also predominately individualized.

Plaintiffs with wholly different injuries require individual analysis and varying standards to prove specific causation. Moreover, the personal injury/product liability cases in and of themselves involve factual issues that must be examined with reference to individual states' torts law. When discovery is likely to require individualized factual inquiries and claims are based on various states' laws, any common questions of fact among the actions are not sufficiently complex and/or numerous to justify a Section 1407 transfer. *See In re Rite Aid*, 655 F. Supp. 2d at 1377.

### C. Alternatively, Should the Panel Determine That Centralization is Necessary, the Proper Venue is the District of Massachusetts and Not SNDY as Covidien insists.

Should the Panel grant centralization, the only place to do so is the District of Massachusetts. The convenience of the parties would be best served by centralizing these cases where Covidien resides; the District of Massachusetts is located very close to a major travel hub,

10

making it convenient and accessible; it is the District where Covidien resides and where a State Court Consolidation already exists; the District is not as heavily burdened with MDLs as SDNY; and there is an inherent risk of COVID infections associated with SDNY that never materialized in the District of Massachusetts.

Furthermore, it cannot be ignored that of the 14 dismissals that Covidien has had granted to date, 7 of them came from the SDNY. Covidien is a Massachusetts resident and under the jurisdiction of the First Circuit. The First Circuit already has a history and precedent dealing with hernia mesh MDLs that Covidien is running from; MDL-1842 (Kugel) and MDL- 2753 (Atrium) were centralized in the First Circuit and Covidien's insistence that it does not want to be held accountable in its home Circuit is loud and clear. SDNY has no connection to Covidien except for the fact that 4 cases are currently pending in it, and if Covidien is to be believed and this litigation will soon "balloon" as the Bard, Atrium, and Ethicon MDLs did three years ago—then there is no reason to consolidate a huge litigation anywhere but where Covidien resides.

## **CONCLUSION**

To conclude, Sharon and Max Black will be severely prejudiced if a consolidation is granted. They have been waiting four years for a trial date and Covidien keeps dragging its feet, preventing them from going to Court and if an MDL is created, it will be another four years before they will get to a jury. An alternative to consolidation exists, and it is for the Plaintiffs with federal cases to work with the Massachusetts State Court Consolidation on deposing witnesses and producing discovery. All Plaintiffs can stay in their home districts while coordinating with the law firms participating in that Consolidation—who are the law firms who led and lead other hernia mesh and pelvic mesh MDLs—and once we have enough discovery, each Plaintiff can serve their expert reports in their home district and continue towards trial.

And if the Panel decides to consolidate these cases, the only choice is the District of Massachusetts. It has everything that the SDNY can offer, and less risk of infection from COVID. Moreover, Covidien resides there and the request for a consolidation in SDNY is nothing but a thinly veiled attempt to escape the jurisdiction of the First Circuit.

Dated: June 30, 2020  Respectfully submitted,

By: _____
Mark T. Sadaka
Michael H. Bowman
Law Offices of Sadaka Associates
155 North Dean Street, Suite 4-D
Englewood, NJ 07631

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: COVIDIEN HERNIA MESH
PRODUCTS LIABILITY LITIGATION                    MDL No. 2953

**PROOF OF SERVICE**

I, Mark T. Sadaka, hereby certify that on June 30, 2020, I caused a true and correct copy of the Response to Defendants Motion for Transfer of Related Covidien Hernia Mesh Products Liability Action to be filed electronically with the Clerk of the Panel using the Judicial Panel on Multidistrict Litigation's JPML CM/ECF system for filing. I further certify that I caused a true and correct copy of this Proof of Service to be filed electronically with the Clerk of the Panel using the Judicial Panel on Multidistrict Litigation's JPML CM/ECF system for filing on June 30, 2020.

Dated: June 30, 2020                           Respectfully submitted,

                                               By: _____
                                               Mark T. Sadaka
                                               Law Offices of Sadaka Associates
                                               155 North Dean Street, Suite 4-D
                                               Englewood, NJ 07631